1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   STUDIO RED INCORPORATED,                    No. C 07-396 CW

11             Plaintiff,

12        v.                                     ORDER DENYING
                                                 PLAINTIFF'S
13   ROCKWELL ARCHITECTURE PLANNING AND          MOTION FOR A
     DESIGN, P.C.,                               PRELIMINARY
14                                               INJUNCTION
             Defendant.
15
     _____/
16

17        Plaintiff Studio Red Incorporated moves for a preliminary

18   injunction.  Defendant Rockwell Architecture Planning and Design,

19   P.C. (Rockwell Architecture), opposes the motion.  The matter was

20   submitted on the papers.  Having considered all of the papers filed

21   by the parties and the evidence cited therein, the Court denies

22   Plaintiff's motion.

23                              BACKGROUND

24        Plaintiff Studio Red is an industrial design firm which has

25   used its name "in association with industrial design, interior

26   design, graphic design, graphical user interface, signage,

27   mechanical engineering, model building, prototyping and light

28

production services since the company was formed in 1983."  Reply

at 4.  Studio Red is headquartered in Redwood City, California.

Rockwell Group, LLC (Rockwell Group) is "a cross-disciplinary

architecture and design firm."  Opposition at 2.[1]  In 2003, Tucker

Viemeister, an independent consultant, was engaged by Rockwell

Group "regarding the formation of a dedicated design lab for Coca

Cola."  Opposition at 2.  Rockwell Group and Coca Cola formed a

design group called Studio Red at Rockwell Group (Rockwell Studio

Red).  Since 2003, Rockwell Studio Red has offered branding design

services, which Defendant describes as working "with clients to

design a branding method for an existing product to create an

experience that showcases the product."  Opposition 3.  Defendant

states that Rockwell Studio Red "is not in the business of

designing devices or industrial products."  Id.

Plaintiff does not state when it first learned that Defendant

was using the Studio Red name.  Defendant alleges that Plaintiff

contacted it by e-mail in August, 2006, asking it to stop using the

Studio Red name.  Plaintiff's CEO states that he does not recall

contacting Defendant in August, 2006, but states that it was his

---

[1]Plaintiff names Rockwell Architecture as the Defendant in
this case.  Defendant alleges that it is a "separate and legally
unrelated entity" from Rockwell Group.  Plaintiff disputes this,
noting that the Rockwell Group website includes Rockwell
Architecture as the contact.  Because it appears that Rockwell
Architecture and Rockwell Group are at least related entities and
Plaintiff seeks to enjoin action by Defendant, "its successors,
assigns, officers, agents, directors, servants, employees,
salespersons, independent contractors, attorneys, corporations,
subsidiaries, all other persons or entities directly or indirectly
under its control or under common control with any of them, and all
other persons or entities in active concert or participation with
any of them," the Court finds that the issue is not relevant to the
resolution of this motion.

United States District Court
For the Northern District of California

"general business practice to send such e-mails when general use of the 'Studio Red' name is brought to [his] attention."  Bourgeois Supplemental Declaration ¶ 2.  Plaintiff alleges that it first learned that Defendant was using the Studio Red name in California from a competitor in October, 2006.  Plaintiff alleges that since that time, it has received mail and telephone calls intended for Defendant and that it has received inquiries regarding its New York City office, which it assumes are actually intended for Defendant. Plaintiff does not have a New York City office.

Plaintiff initially filed its complaint for trademark and trade name infringement in state court on November 15, 2006. Defendant informed Plaintiff that it intended to remove the case to federal court and suggested that the parties meet and confer to attempt to resolve the issue.  Defendant informed Plaintiff that it did not believe that the two businesses were competing in the same field.  The parties agreed to meet and confer.

Plaintiff dismissed its state case and refiled the complaint in this Court in January, 2007.  In February, 2007, Plaintiff stipulated to an extension of time for Defendant to answer the complaint so that the parties could meet and confer.  Defendant attempted to schedule an appointment with Plaintiff but received no response before its answer was due on March 14, 2007.  Defendant answered the complaint and states that it continued to try to schedule a meeting with Plaintiff's counsel.  Plaintiff filed an ex parte application for a temporary restraining order on April 9, 2007.  The Court denied the application but deemed it to be a motion for a preliminary injunction, which it now considers.

United States District Court
For the Northern District of California

DISCUSSION

    To obtain a preliminary injunction, the moving party must establish either: (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions regarding the merits exist and the balance of hardships tips sharply in the moving party's favor.  <u>Rodeo Collection, Ltd. v. West Seventh</u>, 812 F.2d 1215, 1217 (9th Cir. 1987).

    The test is a "continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." <u>Id.</u> (quoting <u>San Diego Comm. Against Registration & the Draft v. Governing Bd. of Grossmont Union High Sch. Dist.</u>, 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).  The moving party ordinarily must show "a significant threat of irreparable injury," although there is "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases," <u>United States v. Odessa Union Warehouse Co-op</u>, 833 F.2d 172, 174, 175 (9th Cir. 1987), and vice versa.  To overcome a weak showing of merit, a plaintiff seeking a preliminary injunction must make a very strong showing that the balance of hardships is in its favor.  <u>Rodeo Collection</u>, 812 F.2d at 1217.

    In trademark infringement and unfair competition cases, a reasonable showing of likelihood of success on the merits raises a presumption of irreparable harm.  <u>LGS Architects, Inc. v. Concordia Homes</u>, 434 F.3d 1150, 1155-56 (9th Cir. 2006); <u>Vision Sports, Inc. v. Melville Corp.</u>, 888 F.2d 609, 612 n.3 (9th Cir. 1989). Plaintiff argues that it is likely to succeed on its trademark claims under the Lanham Act, the California unfair competition

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

statute and the common law for unfair competition.  "The 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'"  Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (quoting New West Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th Cir. 1979)).

The Ninth Circuit has identified eight factors that are relevant to whether consumers are likely to confuse related goods: (1) strength of the mark, (2) proximity of the goods, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) degree of care likely to be exercised by the purchaser, (7) evidence of bad faith intent in selecting the mark, and (8) likelihood of expansion and overlap of the products.  AMF, Inc. v. Sleekcraft, 599 F.2d 341, 348-49 (9th Cir. 1979).  Because each of these factors is not necessarily relevant in every case, the list of factors functions as a guide and is neither exhaustive nor conclusive.  Metro Pub., Ltd. v. San Jose Mercury News, 987 F.2d 637, 640 (9th Cir. 1993).  In fact, the Ninth Circuit has warned against "excessive rigidity" in applying the factors and noted that "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors."  Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1054 (9th Cir. 1999); see also Eclipse Associates Limited v. Data General Corp., 894 F.2d 1114, 1118 (9th Cir. 1990) (Sleekcraft factors "were not meant to be requirements or hoops that a district

5

United States District Court
For the Northern District of California

court need jump through to make a determination"); <u>Murray v. Cable National Broadcasting Co.</u>, 86 F.3d 858 (9th Cir. 1996) (finding no likelihood of confusion after abbreviated <u>Sleekcraft</u> analysis).

Plaintiff argues that there is clear evidence of actual and potential confusion and that it is entitled to a preliminary injunction.  Defendant counters that Plaintiff has failed to establish any of the elements required to establish that a preliminary injunction is appropriate.  First, Defendant argues that Plaintiff has not established a protectable ownership interest in the Studio Red name.  The common law "requires a mark to have been used in commerce before a protectible ownership interest in the mark arises."  <u>Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.</u>, 448 F.3d 1118, 1125 (9th Cir. 2006).  Here, Plaintiff alleges that it has used the name in association with its services and products since founding the company and filing articles of incorporation in 1983.  Further, Plaintiff maintains a website with the Studio Red name.  This is sufficient to establish that Plaintiff has used the mark in commerce.

Next, Defendant asserts that Plaintiff has not established a likelihood of confusion, arguing that the parties provide such different services that confusion is highly unlikely because Defendant's services "are focused on branding and product showcasing while Plaintiff designs devices or industrial objects, and provides prototyping and engineering services."  Opposition at 7.  Plaintiff counters that, like itself, Defendant "designs products [and] graphical user interface and does brand work."  Reply at 9.  However, the "products" that Plaintiff alleges

Defendant makes are not industrial prototypes similar to Plaintiff's work.  Rather, Defendant's products are created to market already existing products.  For example, Plaintiff notes that Defendant has created a product called the Coca Cola Cruiser. This does not refute Defendant's argument that it is unlikely that the sophisticated companies, such as Coca Cola, that hire the parties would confuse Plaintiff's "prototyping services" with Defendant's "post-production branding services."  Opposition at 7.

Plaintiff further argues that it does not matter that the parties' clients are sophisticated corporations because both parties advertise on the internet and because the likelihood of confusion must be considered for "the least sophisticated consumer."  Reply at 9 (quoting Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 293 (3d Cir. 1991).  However, Plaintiff provides no evidence that even the least sophisticated consumer in this case is anything but a "corporation seeking to spend millions for product development and design."  Opposition at 7.

Defendant also argues that Plaintiff's allegations that it has received correspondence and telephone calls at its offices intended for Defendant and that it has received inquiries regarding its New York telephone number when it does not do business in New York are not enough to establish actual confusion.  Defendant notes that Plaintiff makes only these general allegations and does not indicate when it received the correspondence and inquiries, or the frequency or nature of the communications.  Defendant cites Duluth News-Tribune v. Mesabi Publishing Co., 84 F.3d 1093 (8th Cir.) in support of its argument.  In Duluth News, the Eighth Circuit held

7

**United States District Court**
For the Northern District of California

that misdirected mail and phone calls failed to raise a factual
dispute regarding actual confusion because the evidence was
unreliable hearsay and because it found "the evidence to be de
minimis and to show inattentiveness on the part of the caller or
sender rather than actual confusion."  <u>Id.</u> at 1098.

Plaintiff provides no additional details about the misdirected
communications in its reply.  Instead, Plaintiff notes that
California courts have accepted such evidence and argues that these
communications are enough to establish the likelihood of confusion.
However, Plaintiff offers nothing to establish how these phone
calls, even if admissible, show confusion rather than
"inattentiveness."

Plaintiff also alleges that Defendant willfully chose to use
the Studio Red name, knowing that Plaintiff already used it.
Plaintiff bases this allegation on the fact that Phillip Bourgeois,
the founder, president and CEO of Studio Red, had met and
interacted with Viemeister, the consultant hired by Rockwell Group
to create a "design lab" for Coca Cola.  While Defendant
acknowledges Viemeister as the founder of Rockwell Studio Red, it
provides an affidavit from Viemeister stating that he was not
involved in choosing the Studio Red name, that the name was used
because of the affiliation with Coca Cola and that he did not
recall the existence of Studio Red when he was consulting with
Rockwell Group in 2003.  Viemeister Declaration ¶¶ 3, 4.

Even if Plaintiff were able to demonstrate likelihood of
confusion, it has not demonstrated that it will suffer irreparable
harm.  Although a showing of a likelihood of confusion raises a

8

presumption of harm, Defendant has rebutted any such presumption by demonstrating that the intended consumers of the parties' services are not likely to be confused.

Finally, the Court finds that the balance of hardships does not tip sharply in Plaintiff's favor.  Plaintiff has not demonstrated or even suggested any harm that might come from potential clients confusing the parties pending resolution of its claims on the merits.  In contrast, requiring Defendant to rename its established business would likely be detrimental to it. Further, as Defendant notes, even assuming that Plaintiff did not know about Rockwell Studio Red until August, 2006, when Bourgeois emailed to ask it to stop using the name, Plaintiff waited eight months to seek an injunction.  Although this delay may not be enough to bar injunctive relief, it does weigh against Plaintiff's claim of hardship.

The Court finds that Plaintiff has not demonstrated a likelihood of confusion or that the balance of the hardships tips sharply in its favor.

CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for a preliminary injunction (Docket No. 13).

IT IS SO ORDERED.

Dated: 5/18/07

_____
CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California

9